IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STARBOARD COMMERCIAL
BROKERAGE, INC.,

    Plaintiff,

  v.

COLLIER'S INTERNATIONAL GROUP INC.,
individually and as successor-in-interest to Case
Commercial Partners LLC, and DOES 1 through 10,
inclusive,

    Defendants.

No. C 16-06421 WHA

**ORDER RE JURISDICTIONAL DISCOVERY**

## INTRODUCTION

This order arises out of a game of "hide the ball" necessitating at least the discovery relief prescribed at the end, all of which could have been avoided up-front by a simple answer. Our story concerns a plaintiff trying to make sense out of a maze of affiliates to figure out who to sue and a defendant refusing to give a straight answer — yet now wanting to be dismissed as the "wrong" defendant.

## STATEMENT

Plaintiff Starboard Commercial Brokerage, Inc., is a corporate real estate firm, primarily engaged in handling commercial and industrial transactions, focusing on sales and leasing. Starboard is incorporated and maintains its principal place of business in California (Compl. ¶ 1). Defendant Collier's International Group, Inc., is also a real estate firm. In May 2015, Collier's

International Group, Inc., allegedly acquired the real estate firm CASE Commercial Partners, LLC, a Texas limited liability corporation, and became its successor-in-interest (*id*. ¶¶ 2–3).

The background is straightforward and concerns a debt. In 2001, Starboard entered into a written membership agreement with The Commercial Network Worldwide. So did CASE in 2010. The agreements assigned territories in which TCN's members would provide real estate services, created a reporting and compensation structure including paying portions of commissions to TCN, and obligated members of TCN to assign prospects and clients to other members' territories in exchange for referral fees (*id*. ¶¶ 5–7). In 2011, Starboard began to represent HealthMedica, LLC, a San Francisco-based company, to find a new lease for its office. Later that year, Starboard referred HealthMedica to CASE pursuant to their respective membership agreements with TCN. In pursuit of its new client, a representative of CASE traveled to San Francisco to meet with HealthMedica and finalize and execute a representation agreement. HealthMedica executed the agreement retaining CASE as an agent in San Francisco (*id*. ¶¶ 9–10).

CASE and Starboard then negotiated an assignment/referral agreement. CASE agreed to pay Starboard ten percent of any fees earned by CASE from HealthMedica. In accordance with the arrangement, CASE paid fees to TCN and a ten-percent referral fee to Starboard for 28 separate transactions from October 2012 through March 2013. Thereafter, CASE acknowledged that it had earned another $300,000 in commissions from HealthMedica, and therefore owed Starboard another $30,000 in referral fees. CASE, however, contended that it would hold the payment owed against possible liabilities for attorney's fees and costs related to a dispute then brewing between HealthMedica and CASE. In 2013, Starboard demanded payment of the fees from CASE, who refused (*id*. ¶¶ 11–13). In addition to the $30,000, Starboard determined that CASE also owed additional fees pursuant to the referral arrangement, flowing from additional commissions generated by CASE's representation of HealthMedica, both prior to and after Collier's International's acquisition of CASE.

Starboard retained counsel to sue CASE. In doing his homework, however, counsel learned that CASE had been recently acquired by "Collier's International," according to a press

release. Counsel corresponded with internal and external counsel for "Collier's International" in an effort to pin down the correct name of the proposed defendant but never got any answer identifying the entity Collier's International now says should have been sued. Rather, the internal and external counsel said they represented "Collier's International" or "Collier's." So, based on the press release and those communications, Starboard's counsel sued "Collier's International Group, Inc." Neither the press release, nor the e-mails with Collier's counsel called out that "Collier's International North Texas, LLC" is the acquiring entity or the proper entity to sue. In fact, no mention was ever made of "Collier's International North Texas, LLC." Even now, defendant fails to explain how counsel could have figured out the proper entity.

Starboard filed the complaint in the San Francisco Superior Court in June 2016. Collier's International removed the action to federal court here in San Francisco based on diversity jurisdiction. Counsel for both sides represent that the jurisdictional amount of $75,000 is satisfied. Defendant now moves to dismiss for lack of personal jurisdiction and for failure to state a claim. This order follows full briefing and oral argument.

**ANALYSIS**

Starboard contends for both specific and general jurisdiction. Collier's International does not dispute that CASE's execution of the agreement underlying this dispute, an agreement concerning a real estate transaction in the forum, would be sufficient to make CASE amenable to specific jurisdiction. The only dispute is whether CASE's obligations were assumed by defendant versus some other Collier's entity.

In its opening memorandum, Collier's International argues that it did not acquire CASE, but rather, a subsidiary, "Collier's Texas," acquired it (Def.'s Mtn. at 5):

> In reality, Collier's International has no direct connection to the contract, referral arrangement, or any of the California work for which commissions may or may not be owed. Collier's International is not a party to the contract; it did not enter into a referral arrangement with Plaintiff; and it did not perform any of the work at issue in this case. Furthermore, it did not acquire Case or assume any of Case's responsibilities or liabilities. Collier's Texas, a separate, distinct entity, acquired Case.

In other words, after all of plaintiff counsel's efforts and after the lawsuit was framed, the defense has drawn a distinction between "Collier's International Group, Inc." (which has

3

appeared as our defendant) versus "Collier's Texas," and further saying for the first time that "Collier's Texas" was the one who had acquired CASE. Defendant therefore contends it never became CASE's successor-in-interest and, thus, cannot be subject to personal jurisdiction (based on CASE's contacts with the forum). At no time prior to the complaint did defendant's representatives or website or press release mention "Collier's International North Texas, LLC," or anything close.

Collier's International offers the declaration of Dylan Taylor, President and Chief Operating Officer of Collier's International, to support its position, stating that (Taylor Decl. ¶ 4):

> CIGI did not purchase or acquire Case Commercial Partners, LLC ("Case"). A separate and distinct Texas company, Collier's International North Texas, LLC ("Colliers Texas") acquired and now wholly owns Case. Moreover, CIGI does not even directly own Colliers Texas. Another separate and distinct Delaware company, Colliers International WA, LLC, wholly own Colliers Texas. Thus, CIGI, Colliers Texas, and Case are all separate, independent, and distinct entities.

The main point of the instant motion, namely that Collier's International had nothing to do with the acquisition, has been impeached by Collier's International's own website, as follows.

Below is a screenshot from http://www.colliers.com/en-us/about/media/press-releases/colliers-international-acquires-case-commercial-real-estate-texas as viewed by the Court on January 24, 2017:



4

1     Contrary to the declaration, the website flat-out asserts that "Collier's International"
2  acquired CASE. The Court is disappointed that counsel for Collier's International neglected to
3  bring this severe contradiction to the Court's attention in its motion and addressed it only in its
4  reply (after the opposition exposed the contradiction).
5     Prior to filing this complaint, counsel for Starboard, in figuring out which entity to sue,
6  reached out to Santino Ferrante of Ferrante & Associates, outside counsel representing "Collier's
7  International," and Kiersten Weinberger, in-house counsel at Collier's International. The e-mail
8  exchange between Starboard's counsel and the attorneys for Collier's International epitomizes a
9  classic runaround (Hansson Decl. Exhs. A–D). Outside counsel for Collier's referred to his
10 client as "Collier's International" and "Collier's" — never in any way referring to "Collier's
11 International Group, Inc." When explaining the dispute to inside counsel Weinberger, counsel
12 for Starboard said, "I understand Colliers acquired Case." In her response (four months later),
13 inside counsel Weinberger never explained that a different Collier's entity acquired CASE, but
14 merely stated that "Collier's International" and "Collier's" had no obligation in connection to the
15 acquisition of CASE. All Collier's counsel obfuscated the supposed distinction between
16 "Collier's International Group, Inc.," and "Collier's International North Texas, LLC," never
17 even mentioning those names. At oral argument counsel for Collier's International claimed the
18 e-mail exchange with counsel for Starboard commenced after Starboard filed the complaint in
19 June 2016. The e-mails attached to the declaration of Starboard's counsel tell a different story
20 (Matthews Decl. Exh. C). Starboard's counsel reached out to both external and internal counsel
21 of Collier's International beginning in May 2016. Although it is true that internal counsel
22 Weinberger replied only after the complaint was filed, external counsel Ferrante replied 71 days
23 before Starboard filed the complaint. Furthermore, internal counsel could have clarified who the
24 correct defendant should have been, but neglected to do so.
25    Starboard further conducted Internet research to uncover what entity was proper to
26 pursue in this action only to find that "Collier's International" proclaimed it had acquired CASE,
27 as the screenshot above shows (Matthews Decl. ¶¶ 2–5, Exhs. A–D). The Court itself has been
28 trying to understand the Collier's maze. Reviewing the website www.colliers.com that

**United States District Court**
For the Northern District of California

5

published the press release, one sees headings like "554 offices in 66 countries on 6 continents, Collier's International is a global leader in commercial real estate services," leaving the impression that all Collier's worldwide operate as one under the trade name "Collier's International."

Not only is the heading of the website, and every subpage on it, embroidered with a logo that reads "Collier's International," the website also globally refers to all offices as "Collier's International (name of location)," differentiating the various offices not as separate legal entities, but only by geography. When a visitor clicks on the option "Change location," the visitor is presented with a list of cities in which Collier's International practices. By clicking on the link of the "United States" offices, and then on "Dallas," the visitor is steered to a site titled "Collier's International, Dallas Fort-Worth." When navigating to the site for the office in Toronto, the heading reads "Collier's International, Canada." It is not stated the two offices are separate legal entities or that the office in Toronto is "Collier's International Group, Inc.," and the office in Dallas is a separate legal entity called "Collier's International North Texas, LLC." The latter name is never referenced.

Furthermore, on the homepage of www.colliers.com, there is a banner titled "Welcome to Collier's International, Collier's International Group, Inc. (NASDAQ and TSX: CIGI)," under which a video is posted titled "Who is Colliers International?" The video boasts the line, "We are proud to be the advancer of choice of many of the world's most innovative companies." By treating their customers around the world as one client portfolio of one entity, a visitor is once again left with the impression that Collier's offices operate as one.

Nor does the press release save defendant. The title of the press release stated, "Collier's International acquires CASE Commercial Real Estate Partners," leaving the impression that "Collier's International," not "Collier's International North Texas, LLC" (not even mentioned), had purchased CASE. The release referenced the "North Texas Regional Managing Director," leaving the impression that Collier's International managed its North Texas operations through a regional manager. Collier's International, it seems, would like to reap the benefits of presenting itself to the world as one international company but when it comes to legal disputes, dredges up

6

corporate veils. To repeat, at no time prior to the complaint did defendant's representatives or website or press release mention "Collier's International North Texas, LLC," or anything close.

In these circumstances, equity might possibly estop "Collier's International" from denying that it acquired CASE, as it told the world in its release. If the jurisdiction protest by Collier's International is to be entertained, then plaintiff's counsel should, in fairness, be afforded the opportunity to take discovery into the truth of the matter. The motion to dismiss will be held in abeyance pending jurisdictional discovery as follows. Starboard shall be entitled to two full-day and three half-day depositions, twenty requests for production of documents (no subparts), and twenty interrogatories (no subparts), all directed at the jurisdiction issue. Stonewalling will lead to adverse inferences. Overbroad discovery requests will lead to deletion without replacement. Counsel shall cooperate to expedite discovery. Discovery may cover and include the alter ego relationships between and within the entire constellation of Collier's entities. All jurisdictional discovery shall be completed by **MARCH 23, 2017**. Starboard shall supplement the record by **MARCH 30** including a brief up to **FIFTEEN PAGES** (not counting the evidence supplement), and Collier's International may likewise respond by **APRIL 13**. A further hearing is hereby scheduled for **APRIL 27 AT 8:00 A.M.** Please do not ask for extensions. Whether Collier's International must reimburse plaintiff's counsel for the cost of this discovery (due to its obfuscation) will be decided later.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is **HELD IN ABEYANCE** pending jurisdictional discovery.

**IT IS SO ORDERED.**

Dated: February 2, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE